[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Joseph Bials, Sr., (Bials) by writ, summons and complaint, dated May 14, 1990, brought this action against the defendants T M Building Co., Inc. (T M), the Town of Portland (Town), and Richard Paley, Mark Paley, Ralph Paley and Hyime Paley (Paleys'). Bials alleges that the defendants wrongfully entered upon his property and constructed a water pipeline across it without his consent or authorization. Bials claimed money damages, injunction relief and an order quieting his title.
On November 26, 1990, the Paleys' filed a cross complaint against the Town and T M, alleging that the Town and T M induced the Paleys to sign an easement which included the Bials land, which fact was unknown to the Paleys, and therefore were were liable to indemnify the Paleys from any losses suffered as a result of the Bials claim.
On January 24, 1991, T M filed a counter claim against the Paleys claiming to be third party beneficiary of the warranty covenants contained in the easement from the Paleys to the Town and thus entitled to indemnification for claims made against T M by Bials.
On February 15, 1991, the Town filed a cross complaint against the Paleys alleging that the Paleys had breached the covenant of seisin in the easement from the Paleys to the Town for the water pipeline which was built, in part, over Bials land, and, accordingly, claimed damages and indemnification on account CT Page 8588 of Bials claims.
Bials complaint against the Town and T M was withdrawn on November 6, 1992 and was withdrawn as to the Paleys on July 20, 1992.
The issues raised by the cross complaints and the counterclaim were tried to this court on July 20 and 21, 1993. Simultaneous briefs were requested to be filed with the court on or before September 17, 1993.
After a full trial, all parties present and represented by counsel, the court by a preponderance of the credible, relevant and legally admissible evidence, finds the facts, concludes and rules as follows:
During 1988, and at all times pretinent [pertinent] hereto, the Paleys owned real property in the Town of Portland located on the westerly side of Wilcox Hill Road, north of Reservoir Brook and west of Route 17 also known as the Glastonbury Turnpike. The Wilcox Hill Road bridge is immediately adjacent to the Paleys' property upon which they conducted their principal business of selling and distributing hay. Hyime Paley, Ralph Paley and their brother Sydney's estate own the real property immediately across the road from the business property.
T M, in the course of developing and building residential subdivisions, in 1986, acquired from Hyime Paley, Ralph Paley and their six brothers and sisters a large tract of land located about one and one-half miles north of the business property. By April of 1988, T M had obtained subdivision approval from the Town for a 96 lot subdivision for the land purchased from the Paleys. As a condition of approval for the subdivision, the Town required that the development be connected to a public water supply. The closest water supply was at the intersection of routes 17 17A, which was approximately one and one-half miles south of the subdivision and also south of the intersection of Wilcox Hill Road and Route 17.
The public water supply is administered by the Portland Department of Public Works and is supervised by the Director of Public Works. Under the then existing public works standards and practices, any expansion of the Town water system in connection with a subdivision, was required to be designed and built by the subdivision developer subject to the review and approval CT Page 8589 of the Director of Public Works.
The water system original designed and approved for the subdivision indicated a pipeline extending from its existing terminus up Route 17 to the subdivision. In April of 1988, as T M was about to commence construction of the pipeline, the State of Connecticut, Department of Transportation, objected to the proposed route immediately west of the Paleys' business property and suggested an alternate route up Wilcox Hill Road from its south intersection with Route 17 to its north intersection with Route 17. Accordingly, T M redesigned the pipeline as suggested by the state, which redesign was approved by the Town's Director of Public Works.
The new route up Wilcox Hill Road required that the pipeline cross Reservoir Brook in the vicinity of Paleys' business property. It was expected that the pipeline would be laid across the bridge located there. However, state and local officials had determined that the existing Wilcox Hill Road bridge was in need of replacement. No date had been established to replace the bridge and because T M's schedule could not wait for the anticipated new bridge, T M, with the approval and encouragement of the Town decided that the pipeline would bypass the bridge by leaving the road some distance south of the bridge, cross private property, cross the book and return to the road north of the bridge.
A map was prepared by T M's engineers indicating the route up Wilcox Hill Road which was approved by the Town. This map showed only the road, the bridge and the proposed easements needed to by pass the bridge. The map did not include any property lines or the names of the owners. The property owners and the property lines later appear on a map prepared for the Town in conjunction with the bridge replacement project.
The Town employed an engineer to observe and inspect the installation of the waterpipe by T M. A daily log was kept of work as it progressed. The log indicates that, on June 27, 1988, work commenced at the existing terminus of the pipeline. On June 28, 1988, the point was reached where the pipeline left the road and crossed private property. On June 29 and 30, 1988, Reservoir Brook was crossed by the pipeline which then returned to the road, crossing Paleys' business property located near the bridge. The area, south of the bridge, that was crossed by the pipeline was not owned by the Paleys but was in fact owned by Bials. The by pass was completed by July 5, 1988 and was done, CT Page 8590 including the crossing of private land, without anyone obtaining any easements from any property owners whose land had been crossed.
On September 15, 1988, Hyime Paley was approached by a representative of T M and was asked for an easement for the pipeline which already was in place. After negotiations it was agreed that in exchange for the easement the Paleys would be paid $18,000.00 and would have four driveways paved by T M.
The Paleys made it known at the onset that all expenses in connection with the grant of the easement would not be their responsibility. They expected that T M would produce the required documentation outlining the easement. The easement was in fact, prepared by the attorneys for the Town who relied on information furnished them by the Town's Director of Public Works. Neither the Town's attorney, the Director of Public Works nor T M did a title search prior to the execution of the easements. Counsel who drafted the easement drafted same me in accordance with information supplied to him by the Director of Public Works. The Paleys relied on T M to produce a document in accordance with the needs and requirements of the easement. The Paleys had no input into the creation of the document. Assuming that the document was a grant of casement over their property the Paley's executed same. The Paleys made no representations to anyone that they owned any land other than the land they actually owned.
However, the easement, although attributing ownership of all the land to the Paleys, in fact crossed over land owned by others, namely Bials and the Conklins.
Upon learning that the pipeline crossed his property, Bials made a demand upon the Town for compensation which the Town refused. This action resulted. The Town commenced a condemnation action against Bials to take an easement across his property for the pipeline as it had been laid. Bials responded by instituting a damage action for a wrongful taking and a violation of civil rights. Ultimately, Bials settled with the parties as indicated above.
As to the cross complaint of the defendants Ralph Paley, Hymie Paley, Richard Paley and Mark Paley (Paleys), against the Town of Portland (Town) and T M Building Co., Inc. (T M). The court expressly finds, concludes and rules as follows: CT Page 8591
On or about September 17, 1988, the Paleys executed a grant of a water pipeline easement to the Town. The property subject to said easement was surveyed by T M who also sited the location of the pipeline as it crossed the property and the stream. The easement document was drafted by counsel for the Town as instructed by the town's director of public works. T M agreed that they would bear all expenses related to the preparation and obtaining of the easement and such would be done without any expense to the Paleys. Under the regulations of the Town, the subdivider is required to obtain all necessary easements in connection with the approved subdivision. The Paleys, as they had in dealings with T M in the past, relying on the representations of T M, did not engage a surveyor or legal counsel. They accepted as accurate and meeting T M's need, the papers presented to them as those required to perfect the easement. The easement was a document prepared by the Town's attorney and was presented to the Paleys for their signatures by T M who in the process of procuring the execution of the easement were acting as agents for the Town in acquiring Paleys signatures.
However, the description of the land as found in the easement document included land owned by Bials and obviously outside of the power of Paleys to grant any easement over same. The Paleys were under the impression that the grant of easement was limited to land they owned. At the time they signed the easements, relying of the representation of T M, the Paleys did not intend to grant an easement over land they did not own. The Town, T M, town counsel and the Towns Director of Public Works undertook the responsibility of preparing the document and in so doing mistakenly included in the document presented to the Paleys, land the Paleys did not own.
The court concludes that, although the Paleys relied upon T Ms and the town representations, they were derelict in signing a document granting an easement over land they did not own and accordingly, in weighting the equities of the facts and circumstances in this case, judgment should enter for T M and the Town on the Paleys' cross complaint.
As to the counter claim of T M against the Paleys, the court finds, concludes and rules as follows.
The court includes herein, as applicable to this counter claims, the facts as found in the Paleys cross complaint above. CT Page 8592
The court reiterates its finding that T M presented the document that was prepared by the Town to the Paleys and represented to them that the grant of easement contained therein was what was required of the Paleys. The Paley's made no representations of the accuracy of the land description contained in the documents and by executing same did not intend to deceive T M or convey an easement over land they did not own. T M presented the document to the Paleys as accurate after they undertook the obligation to do so. T M knew what was required of them and represented to the Paleys that the document met their needs.
Again in weighing the equities, T M should not prevail against the Paleys for damages which were caused by their submission to the Paleys the flawed document which granted an easement over [and not owned by the Paleys and which fact was unknown to the Paleys.
Accordingly, judgment should enter for the Paley's against T M on T Ms counter claim.
As to the Towns cross complaint against the Paleys' the court finds, concludes and rules as follows:
The court finds the facts where applicable as it found above in its analysis of Paley's cross complaint against the Town and T M.
Again, the court is confronted with a situation where the Town and T M presented a document for the Paley's signature which the town's attorney drafted upon information provided to counsel by the Towns Director of Public Works. The Paleys relied upon the accuracy of the documents presented to them. The Town and T M, acting as the town's agent, in procurring the easement, represented to the Paleys that the document presented was required to complete the grant of the easement.
We note that neither the Town nor T M conducted a title search to determine the owners of the land crossed by the easements.
Even though the Town prepared the document without any representations or guidance from the Paley's and are responsible for the land description contained therein, they now seek to recover for a breach of the covenant of seizen [seisin] contained therein. CT Page 8593 This position is untenable.
The paleys [Paleys] actually did own a portion of the land subject to the easement. Certainly both the covenant of warranty and seizens [seisins] apply to that portion and were not breached.
Any damages suffered by the Town was caused by its erroneous inclusion of the Bials land as Paley property in the document the Town prepared.
Accordingly, the court after weighing the equities concludes that judgment should enter for the Paley on the Towns' cross complaint. The court holds that all parties hereto either by ommission [omission] or commission manifested a departure from prudent behavior and that none of them are entitled to damages resulting from their own malfeasances.
Therefore, judgment is hereby entered for the defendants Town of Portland and T M Building Co., Inc., on the cross complaint of the defendants, Ralph Paley, Hymie Paley, Richard Paley and Mark Paley, without costs to any party.
And, judgment is hereby entered for the defendants, Ralph Paly [Paley], Hymie Paley, Richard Paley and Mark Paley on the counterclaim of the defendant, T M Builders Co., Inc., without costs to any party.
Any, judgment is hereby entered for the defendants, Ralph Paly [Paley], Hymie Paley, Richard Paley and Mark Paley on the cross complaint of the defendant Town of Portland, without costs to any party.
Further, the defendant Paley's motion for leave to amend cross complaint, dated Sept. 17, 1993, is denied.
SPALLONE STATE TRIAL REFEREE
Judgment Entered in Accordance with Foregoing Memorandum of Decision. Michael Kokoszka, Chief Clerk CT Page 8594